## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **CHLOE DEONNA**<br>Philadelphia, PA 19147 | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| **v.** | : **CIVIL ACTION NO.** |
| | : |
| **CENTRE HILLS COUNTRY CLUB**<br>153 Country Club Road<br>State College, PA 16801 | : |
| | : |
| | : |
| Defendant. | : **JURY TRIAL DEMANDED** |
| | : |

## COMPLAINT

### I.      INTRODUCTION

Plaintiff, Chloe DeOnna, brings this action against her former employer, Centre Hills Country Club ("Defendant"). Defendant discriminated against Plaintiff based on her sex and retaliated against her based on her complaints of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"). Plaintiff seeks all damages, including economic loss, compensatory and punitive damages, attorneys' fees and costs, and all other relief this Court deems appropriate under applicable laws.

### II.     PARTIES

1.      Plaintiff is an individual and a citizen of Pennsylvania.

2.      Plaintiff is female.

3.      Defendant, Centre Hills Country Club, is a corporation duly organized and existing under the laws of Pennsylvania with a principal place of business located in State College,

Pennsylvania.

4.      Defendant engages in an industry affecting interstate commerce that regularly does business in Pennsylvania and with entities and individuals in Pennsylvania. Defendant also employs residents of Pennsylvania.

5.      At all times material hereto, Plaintiff was employed by Defendant in Pennsylvania.

6.      At all times material hereto, Defendant employed more than fifteen (15) employees.

7.      At all times material hereto, Defendant employed four (4) or more individuals in Pennsylvania.

8.      At all times material hereto, Defendant did not strictly limit its facilities and services to its club members and their guests.

9.      At all times material hereto, Defendant publicly advertised to solicit members and/or to promote the use of its facilities or services by the general public.

10.      At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

11.      At all times material hereto, Defendant acted as an "Employer" within the meaning of the statutes that forms the basis of this matter.

12.      At all times material hereto, Plaintiff was an "Employee" of Defendant within the meaning of the statutes that forms the basis of this matter.

## III.   **JURISDICTION AND VENUE**

13.      The causes of action that form the basis of this matter arises under Title VII and the PHRA.

14.      The District Court has jurisdiction over Count I (Title VII) pursuant to 28 U.S.C.

§ 1331.

15.     The District Court has supplemental jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. § 1367.

16.     Venue is proper in this District Court under 28 U.S.C. § 1391(b).

17.     On February 26, 2018, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC"), complaining of the acts of discrimination and retaliation alleged herein (the "Complaint of Discrimination"). The Complaint of Discrimination was cross-filed with the Equal Employment Opportunity Commission ("EEOC").

18.     On or about November 27, 2020, the EEOC issued to Plaintiff a Notice of Right to Sue for the Complaint (the "Notice"). Attached hereto, incorporated herein, and marked as Exhibit A is a true and correct copy of the Notice (with personal identifying information redacted).

19.     More than 1 year has passed since Plaintiff filed her Complaint of Discrimination with the PHRC.

20.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

IV.     **FACTUAL ALLEGATIONS**

21.     Plaintiff (female, 23 years old at the time) was hired by Defendant on or about April 25, 2016, as a Server/Bartender.

22.     As a Server/Bartender, Plaintiff reported directly to Jenny Read ("Read") (female), Front-House Manager, and Liz Mishock ("Mishock") (female), Assistant General Manager, who reported to Dave Krauth ("Krauth") (male), General Manager.

23.     During the course of Plaintiff's employment at Defendant, she was subjected to a hostile work environment based on sex, which included, but was not limited to, the following:

3

a.  In or around the summer of 2016, Mike Hill ("Hill") (male, approximately 62 years old at the time), Kitchen Manager, touched Plaintiff's hair and touched her buttocks as she walked out the door. In response, Plaintiff informed Hill that this was not okay and that it better not happen again. Plaintiff informed Read about the incident with Hill, who failed to take any remedial action.

b.  In November of 2016, in the context of discussing Plaintiff's upcoming vacation, Hill told Plaintiff that, "if I was younger, I would chase you all over the world."

c.  On numerous occasions, despite Plaintiff rejecting Hill's sexual advances and/or responding to his inappropriate comments by informing him that they made her uncomfortable and that she wanted him to remain professional at work, Hill made inappropriate sex-based comments to Plaintiff. For example:

  i.   On August 24, 2017, Hill sent Plaintiff a text message asking her to leave the door unlocked for him and the porch light on, and asking what size bed she had;

  ii.  On August 24, 2017, Hill sent a text message to Plaintiff with his address and where to find his bedroom at his house.

  iii. Approaching Plaintiff and other females with a paddle in his hands and asking them, "who wants to get paddled next?";

  iv.  Commenting "damn" as Plaintiff walked by in reference to her personal appearance;

  v.   Telling Plaintiff that she is "the perfect woman";

  vi.  Asking Plaintiff about her personal relationships, including whether she had a boyfriend;

4

vii.   Proposing to Plaintiff and frequently asking when she would accept the proposal;

viii.   During a conversation regarding drinking alcohol, Hill stated to Plaintiff that he could not drink because he wanted to be "ready for [their] wedding night";

ix.   Making various comments to Plaintiff about her personal appearance, including, but not limited to, telling her that she had "perfect" features and commenting positively on her weight;

x.   Asking Plaintiff if she would fundraise for him on the corner downtown in a string bikini.

d.   At a golf tournament in the summer of 2017, Fred Egerer ("Egerer"), Board Member, and his guests ordered several rounds of shots and encouraged Plaintiff to drink with them. Thereafter, Egerer and his guests asked Plaintiff several times if she would let them take "body shots" off of her, which Plaintiff declined.

e.   While Plaintiff was returning to the clubhouse with the beverage cart, Egerer and one of his guests blocked the only exit and attempted to pressure Plaintiff to take off her shirt and allow them to take "body shots" off of her. After Plaintiff again refused, Egerer offered her money and stated that they were in a place where no one would see.

f.   Later that day, Egerer's guest approached Plaintiff and told her that he would have given her $100 for each body shot that she allowed him and Egerer to take off of her. The guest also told Plaintiff, with Read present, that he would be willing to have a threesome with Plaintiff and another male club member.

g.   While serving alcohol at Defendant's golf course, Plaintiff was asked by a member of Defendant, with Read present, to take off her shirt.

24.   Within a week of the incident, Plaintiff complained to Read about the discriminatory conduct of Egerer and his guests. Defendant failed to take appropriate remedial and/or corrective action regarding Plaintiff's complaints.

25.   Plaintiff made numerous complaints to Defendant regarding Hill's discriminatory conduct to Read, Mishock, and Krauth. Defendant failed to take appropriate remedial and/or corrective action regarding Plaintiff's complaints.

26.   Defendant was aware of Hill's reputation for sexually harassing its female employees and past complaints about Hill regarding same.

27.   For example. in the summer of 2017, while setting up for a golf tournament, Krauth and Hill got into an argument and Krauth stated to Hill "Do you know how many girls come to me complaining about how creepy you are?"

28.   On August 25, 2017, after Plaintiff ignored Hill's sexual advances in his August 24th text messages, Hill confronted Plaintiff and asked why she did not respond.

29.   On August 31, 2017, Plaintiff told Hill, via text, that, "your text made me uncomfortable. I though you crossed a line. I'm not interested in being involved with you outside of work" (Plaintiff's "August 31st Text").

30.   Immediately after Plaintiff's August 31st Text, Hill began ignoring Plaintiff at work, including not answering her work-related questions, which negatively impacted her ability to properly serve her customers.

31.   On or about September 1, 2017, Plaintiff complained to Mishock regarding Hill's inappropriate text messages and past discriminatory conduct.

32.     Mishock failed to take any remedial measures to address or prevent Hill's discriminatory conduct towards Plaintiff.

33.     Beginning in September of 2017, Hill's behavior towards Plaintiff became increasingly aggressive in retaliation for her complaints of sex discrimination and/or her rejection of his sexual advances, including, but not limited to, the following:

      h.   While Plaintiff was training a new employee, Hill made a comment to Plaintiff regarding women wanting equal pay but not doing equal work;

      i.   While Plaintiff was putting food in containers, Hill began throwing the food away instead;

      j.   Making negative comments to Plaintiff and her coworkers (in front of Plaintiff) about Plaintiff's body, including making comments about Plaintiff's weight, including saying that, Plaintiff was overweight, and that she should not be eating when employees were eating leftovers after an event.

34.     On November 8, 2017, Plaintiff complained to Chef Brandin ("Brandin") (male), Kitchen Chef, about Hill's retaliatory conduct and stated to him that it was creating a hostile work environment for her.

35.     In response, Brandin apologized to Plaintiff for Hill's behavior and stated that he was unsure of what to do.

36.     On November 12, 2017, during a breakfast shift, Plaintiff asked another employee to make her a meal. When Hill found out that the meal was for Plaintiff, Hill called the employee a "piece of shit" and did not talk to the employee for the rest of the day and threw out the food.

37.     In or around mid-November of 2017, Plaintiff began seeking medical treatment for work-related anxiety due to Defendant's discriminatory and retaliatory conduct.

38.     On November 16, 2017, after failing to hear back from Brandin, Plaintiff complained to Krauth about Hill's discriminatory and retaliatory conduct.

39.     In response, Krauth told Plaintiff that he would speak with Hill the following day about his conduct.

40.     Krauth failed to address Plaintiff's complaints with Hill on November 17, 2017.

41.     On November 20, 2017, Krauth informed Plaintiff that he and Brandin were planning to speak with Hill the following day about his conduct.

42.     Krauth and Brandin failed to take remedial measures to address or prevent Hill's retaliatory conduct towards Plaintiff.

43.     After Krauth's alleged meeting with Hill, Hill's retaliatory conduct towards Plaintiff continued.

44.     For example, on December 10, 2017, Hill yelled at Plaintiff in-front of other employees for packing up leftovers after an event, despite every other employee who worked the event being allowed to do same.

45.     During the evening of December 10, 2017, Mishock approached Plaintiff about her "attitude" and asked what was wrong.

46.     Plaintiff expressed to Mishock that she was struggling to cope with such a hostile work environment, to which Mishock did not respond.

47.     On January 4, 2018, Plaintiff sent a letter to Krauth, via email, detailing the events with Hill and the actions that she took to attempt to resolve Hill's harassment towards her with various managers at Defendant (the "January 4th Letter").

48.     In the January 4th Letter, Plaintiff notified Krauth that she was ending her employment with Defendant because of the ongoing discriminatory and retaliatory conduct.

49.     Defendant did not respond to Plaintiff's January 4th Letter.

50.     Plaintiff's sex was a motivating and/or determinative factor in Defendant's discriminatory and retaliatory treatment of Plaintiff, including, but not limited to, the hostile work environment to which Plaintiff was subjected, which caused Plaintiff to terminate her employment with Defendant.

51.     Plaintiff's complaints of sex discrimination were a motivating and/or determinative factor in Defendant's retaliatory treatment of Plaintiff, including, but not limited to, the hostile work environment to which Plaintiff was subjected, which caused Plaintiff to terminate her employment with Defendant, and constituted a continuing violation.

52.     Plaintiff's rejections of Hill's sexual advancements were a motivating and/or determinative factor in Defendant's retaliatory treatment of Plaintiff, including, but not limited to, the hostile work environment to which Plaintiff was subjected which caused Plaintiff to terminate her employment with Defendant, and constituted a continuing violation.

53.     The retaliatory actions taken against Plaintiff after she engaged in protected activity, including, but not limited to, the hostile work environment to which Plaintiff was subjected, would discourage a reasonable employee from complaining of discrimination at Defendant, and constituted a continuing violation.

54.     Defendant failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory conduct.

55.     The discriminatory and retaliatory conduct of Defendant, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff

believe that the conditions of employment had been altered and that a hostile work environment existed.

56.     As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

57.     Defendant acted with malice and/or reckless indifference to Plaintiff's protected rights, which warrants the imposition of punitive damages against Defendant.

**COUNT I**
**(VIOLATION OF TITLE VII)**

58.     Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

59.     By committing the foregoing acts of sex discrimination and retaliation, and creating a discriminatory hostile work environment against Plaintiff, Defendant has violated Title VII.

60.     Said violations were intentional and with malice and/or reckless indifference to Plaintiff's rights and warrant the imposition of punitive damages.

61.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

62.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

63.     No previous application has been made for the relief requested herein.

**COUNT II**

10

## (VIOLATION OF THE PHRA)

64.     Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

65.     By committing the foregoing acts of discrimination against Plaintiff, Defendant violated the PHRA.

66.     As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff has sustained the injuries, damages and losses set forth herein and has incurred attorneys' fees and costs.

67.     Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

68.     No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's unlawful conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)     declaring the acts and practices complained of herein to be in violation of Title VII and the PHRA;

(b)     enjoining and permanently restraining the violations alleged herein;

(c)     entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

(d)      awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(e)      awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(f)      awarding punitive damages to Plaintiff under Title VII;

(g)      awarding Plaintiff other such damages as are appropriate under Title and the PHRA;

(h)      awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and,

(i)       granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.


                                             **CONSOLE MATTIACCI LAW**

                                             BY: *Brian C. Farrell*
                                                   BRIAN C. FARRELL, ESQ.
                                                   1525 Locust Street, 9th Floor
                                                   Philadelphia, PA 19102
                                                   (215) 545-7676

Dated: 2/23/2021                             *Attorneys for Plaintiff*