IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHLOE DEONNA,

        Plaintiff,

      v.

CENTRE HILLS COUNTRY CLUB,

        Defendant.

No. 4:21-CV-00331

(Chief Judge Brann)

## MEMORANDUM OPINION

### DECEMBER 30, 2022

Plaintiff Chloe DeOnna sues her former employer, Defendant Centre Hills Country Club ("CHCC"), for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* However, the Court's opinion does not address the merits of DeOnna's discrimination claim because CHCC argues that it is not subject to Title VII. It argues is not an "employer" as that term is defined in Title VII. Instead, CHCC claims to be a private membership club excluded from Title VII's ambit and has moved for summary judgment on DeOnna's claims based on its private membership club status.

As is explained below, the Court agrees with CHCC that it is a private membership club under Title VII and accordingly concludes that summary judgment is appropriate on DeOnna's Title VII claim. Because the Court finds summary

judgment appropriate on DeOnna's Title VII claim, it will decline to exercise supplemental jurisdiction over DeOnna's PHRA claim and dismiss it without prejudice. Therefore, for the reasons that follow, CHCC's motion is granted in part and denied in part.

## I.      BACKGROUND[1]

### A.      Underlying Facts

CHCC is a golf club founded in 1921 for the purpose of promoting social relation through athletics.[2] It maintains a facility in State College, Pennsylvania containing two golf courses, a swimming pool, tennis courts, and dining facilities.[3] It operates according to its bylaws, which vest all management authority into a nine-member Board of Directors.[4]

CHCC holds events throughout the year. Some are only for members; others may have both members and nonmembers in attendance. Subject to Board approval, members may host events or sponsor events for third-party organizations and invite nonmembers to both.[5] They may also invite guests to accompany them when they attend CHCC.[6] Nonmembers who live within seventy-five miles of State College are limited to using CHCC's main golf course twice in one year but are not limited in

---

[1]   Given the Court's ultimate disposition of this matter, it only recites the facts relevant to CHCC's private membership club status.

[2]   *See* CHCC Charter, Doc. 22-9 at 1-2.

[3]   *See* CHCC Rules and Regulations, Doc. 22-13 at 2-4; CHCC Bylaws, Doc. 22-12 at 1.

[4]   CHCC Bylaws, Doc. 22-12 at 1.

[5]   CHCC Rules and Regulations, Doc. 22-13 at 17.

[6]   *Id.*

how many times they can use the nine-hole course.[7] A member is allowed a total of three guests at any one time on the golf course.[8] CHCC has also been chosen as the occasional site for professional golf tournaments.[9]

Interested individuals may contact CHCC for an application.[10] To become a member of CHCC, an individual must fill out a written application and be sponsored by a CHCC member in good standing.[11] At that point, the individual is a prospective member and has "very limited access" to CHCC facilities.[12] Their name is posted for all members to see for thirty days, during which CHCC conducts a criminal background check and any CHCC member may contact CHCC's Board to relay any reason that the prospective member should not be admitted.[13]

At some point during the thirty-day period, the Board votes whether to admit the prospective member.[14] The Board may require the prospective member to attend meetings and answer questions.[15] A prospective member must pay an initiation fee and then pay annual dues if admitted.[16] If admitted, both the member and their spouse become full members of CHCC, but spouses do not count towards the member

---

[7]  *Id.* at 6.
[8]  *Id.*
[9]  Federal Rule of Civil Procedure 30(b)(6) Dep. of CHCC President Damian Mochan, Doc. 22-6 at 41:17-42:14.
[10]  *Id.* at 79:5-80:3.
[11]  *Id.* at 75:4-18.
[12]  *Id.* 75:18-22.
[13]  *Id.* at 75:22-76:15.
[14]  *Id.* at 77:15-23.
[15]  *Id.* at 78:5-21.
[16]  *Id.* at 80:11-17.

quota.[17] CHCC's Board sets a membership quota, which appears to have been 400 members in 2017.[18]

### B.    Procedural History

DeOnna sues CHCC for sex discrimination in violation of both Title VII (Count I) and the PHRA (Count II).[19] CHCC moves for summary judgment on both claims under Federal Rule of Civil Procedure 56.[20] Its motion has been fully briefed and is ripe for disposition.[21]

## II.    LAW

Under Rule 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[22] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[23] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[24]

---

[17]    *Id.* at 77:18-78:1
[18]    *Id.* at 76:16-77:3. The membership cap is now 350 members. *Id.*
[19]    Compl., Doc. 1 ¶¶ 58-68.
[20]    CHCC MSJ, Doc. 20.
[21]    CHCC Br., Doc. 28; CHCC Statement of Facts ("SOF"), Doc. 21; DeOnna Opp. Br., Doc. 34; DeOnna Resp. to CHCC's Statement of Facts ("RSOF"), Doc. 35 ¶¶ 4-6, 40-44; CHCC Reply, Doc. 36.
[22]    Fed. R. Civ. P. 56(a).
[23]    *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[24]    *Clark*, 9 F.3d at 326.

Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[25]

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[26] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[27] The United States Court of Appeals for the Third Circuit explains that the nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[28] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[29]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[30] a court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[31] Moreover, "[i]f a party fails to properly support an assertion of fact or fails

---

[25]  *Id.*
[26]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[27]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
[28]  *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 252 (3d Cir. 2010).
[29]  *Port Authority of N.Y. and N.J. v. Affiliated FM Insurance Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988)).
[30]  *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).
[31]  *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

to properly address another party's assertion of fact as required by Rule 56(c)," the court may "consider the fact undisputed for purposes of the motion."[32] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[33]

## III.   ANALYSIS

### A.   Title VII's Private Membership Club Exemption

DeOnna brings her claims under Title VII and the PHRA. Title VII regulates discrimination in American workplaces, prohibiting workplace discrimination on the basis of race, color, religion, sex, or national origin.[34] Accordingly, it applies to employers, which are defined in Title VII as people or entities "engaged in an industry affecting commerce" who employ fifteen or more other people.[35] But the class of employers regulated by Title VII does not include "bona fide membership club[s] . . . which [are] exempt from taxation under [26 U.S.C. § 501(c)]."[36]

The parties agree as to the test for identifying a bona fide membership club.[37] The test comes from the EEOC's Compliance Manual and was adopted in large part by the United States Court of Appeals for the Seventh Circuit in *EEOC v. Chicago*

---

[32]   Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

[33]   Fed. R. Civ. P. 56(c)(3).

[34]   *See* 42 U.S.C. § 2000e-2.

[35]   42 U.S.C. § 2000e(b).

[36]   *Id.*

[37]   CHCC Br., Doc. 28 at 8; DeOnna Opp. Br., Doc. 34 at 14-15.

*Club*, which appears to be the only published appellate decision applying the bona fide membership club exemption to Title VII.[38]

First, as explicitly expressed in 42 U.S.C. § 2000e(b), to be a private membership club, an organization must be "exempt from taxation under [26 U.S.C. § 501]." DeOnna concedes that CHCC is a tax-exempt entity under section 501, so there is no factual dispute on this element.[39]

Second, "an organization is a bona fide private membership club if: (1) it is a club in the ordinary and common meaning of that word; (2) it is private; and (3) it requires meaningful conditions of limited membership."[40] To assess whether an organization is "private," courts consider "(1) the extent to which it limits its facilities and services to club members and their guests; (2) the extent to which and/or the manner in which it is controlled or owned by its membership; and (3) whether, and, if so, to what extent and in what manner[,] it publicly advertises to

---

[38]   86 F.3d 1423, 1433 (7th Cir. 1996). In their papers, both DeOnna and CHCC cite to Title II cases. DeOnna asks the Court to not rely on CHCC's Title II cases on the merits of her claim, *see* DeOnna Opp. Br., Doc. 34 at 19 n.3, despite her own citation to Title II cases to argue that CHCC carries the burden to show the private club exclusion applies to it, *see id.* at 13-14. Admittedly, the EEOC's test and the test used in Title II cases share some criteria. *Compare Chicago Club*, 86 F.3d at 1433 (adopting the EEOC test), *with United States v. Lansdowne Swim Club*, 713 F. Supp. 785, 796 (E.D. Pa. 1989) (building an eight-factor test from Title II case law, which includes "[w]hether the club advertises for members," its nonprofit status, and the "use of the facilities by nonmembers," among others), *aff'd*, 894 F.2d 83 (3d Cir. 1990). In *Lansdowne*, a Title II case, the Third Circuit rejected a defendant's argument that the EEOC's definition should guide the application of the private club exception in Title II. *See* 894 F.2d at 85 n.3. This matter presents the reverse situation. Therefore, the Court does not find Title II case law persuasive to the extent that it relies on factors that do not closely resemble the factors in the EEOC's test adopted by the Seventh Circuit in *Chicago Club*.

[39]   Letter from Brian C. Farrell, Esq., Doc. 44.

[40]   86 F.3d at 1433.

solicit members or to promote the use of its facilities or services by the general public."[41] "With respect to conditions of membership, [the] EEOC identifies the membership's size, limitations thereon, and eligibility requirements as relevant considerations."[42] DeOnna concedes the second factor of the "private" analysis, that CHCC is "controlled or owned by [its] membership."[43]

Although they agree to the relevant test, the parties dispute over who carries the burden of proof with respect to the test laid out above. In its prior Order, the Court concluded that DeOnna carried the burden because Title VII excludes private membership clubs from its definition of employers subject to Title VII's requirements.[44] As the Seventh Circuit concluded in *Chicago Club*, a party seeking the benefit of a statutory exception carries the burden to show that the exception applies to it.[45] But a party seeking to include another otherwise exempted party within the reach of a statute—as DeOnna seeks to do here—carries the burden to show that the exempted party is not entitled to that exemption.[46] Accordingly, DeOnna carries the burden.

---

[41]   *Id.*

[42]   *Id.*

[43]   DeOnna Opp. Br., Doc. 34 at 14, 14 n.1.

[44]   December 16, 2022 Order, Doc. 40 at 1-2 (citing *Chicago Club*, 86 F.3d at 1429).

[45]   *Chicago Club*, 86 F.3d at 1429 (citing *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 188 n. 20 (1985) (White, J., dissenting); *United States v. Columbus Country Club*, 915 F.2d 877, 881-82 (3d Cir. 1990)).

[46]   *Id.* (citing *Ryan v. Carter*, 93 U.S. 78 (1876); *United States v. Dickson*, 40 U.S. 141, 165 (1841)).

The Court will begin by discussing the first two elements of the exemption together: whether CHCC is a club and whether it is a private club. Then the Court will address CHCC's conditions on membership, the third element.

### B.     CHCC Is A Private Club

As stated above, to be a bona fide membership club, CHCC must both be "a club in the ordinary and common meaning of that word" and be "private."[47] The EEOC has adopted the dictionary definition of "club," defining it as "an association of persons for social and recreational purposes or for the promotion of some common object (as literature, science, political activity) usually jointly supported and meeting periodically, membership in social clubs usually being confirmed by ballot and carrying the privilege of use of the club property."[48] DeOnna does not appear to contest that CHCC is an organization that promotes social and recreational purposes or that its members are elected into CHCC and are privileged to use CHCC property.[49] Therefore, the undisputed facts show that CHCC meets the ordinary definition of "club."

To determine whether a club is private, the Court considers (1) "the extent to which it limits its facilities and services to club members and their guests"; (2) "the

---

[47]   *Chicago Club*, 86 F.3d at 1433.

[48]   EEOC, Section 2 Threshold Issues, No. EEOC-CVG-2000-2 (2000) (quoting *Quijano*, 617 F.2d at 131). This document, which is part of the EEOC's sub-regulatory guidance, superseded the EEOC Compliance Manuals that the *Chicago Club* court cited. *See id.*

[49]   DeOnna RSOF, Doc. 35 ¶¶ 4-6, 40-44. Although DeOnna argues that CHCC has impermissibly allowed nonmembers to use its facilities, the definition of club adopted by the EEOC does not consider the presence of nonmembers. DeOnna's arguments about nonmember use are discussed in the "private" analysis.

extent to which and/or the manner in which it is controlled or owned by its membership"; and (3) "whether, and, if so, to what extent and in what manner[,] it publicly advertises to solicit members or to promote the use of its facilities or services by the general public."[50] DeOnna argues CHCC is not private because it impermissibly allows nonmembers to use its property. The Court next addresses the elements of the "private" analysis.

### 1. CHCC Limits Its Facilities and Services to Club Members and Their Guests

DeOnna alleges that guests of these events "enjoy[ed] unlimited access to [CHCC's] property."[51] She therefore argues that CHCC does not distinguish between members and nonmembers at all and accordingly should not be able to claim it is "private." For that proposition, DeOnna cites to *EEOC v. University Club of Chicago*.[52] There, the court concluded that the 3000-member University Club of Chicago treated members and nonmembers alike, because it issued guest cards to nonmembers that allowed them to access all of the Club's facilities without being accompanied by a member.[53] The court also noted that nonmember guests could host their own events.[54] Even third-party organizations without any relation to a member

---

50  *Chicago Club*, 86 F.3d at 1433. Again, DeOnna concedes the second element of that analysis. DeOnna Opp. Br., Doc. 34 at 14 n.1.
51  *Id.* at 19.
52  763 F. Supp. 985 (N.D. Ill. 1991).
53  *Id.* 987-88.
54  *Id.*

were allowed to host events.[55] Those lax restrictions undermined the Club's "private" status.[56]

The Court agrees with DeOnna that if there was no meaningful distinction between guests and members, CHCC could not be a private club. But the *Chicago Club* court concluded that requiring any guest to be invited by a member was a sufficient restriction to maintain a club's privacy and that there was no need to show "depth of intimacy" between the member and their guest.[57] Therefore, DeOnna must show that CHCC's restrictions on guests are akin to the lax restrictions in *University Club*, which she ultimately fails to do.

### a.    Guest Access at CHCC

First, DeOnna fails to show that guests had "unfettered access" to CHCC at events throughout the relevant period of 2015 to 2018.[58] Her arguments fall along two related lines: (1) that CHCC held events without meaningful restrictions on who could attend them as guests and (2) that CHCC held events for third-party organizations with limited control over the attendance at said events. Neither of these arguments establish that CHCC's guest restrictions are sufficiently lax to conclude that it is not a private club.

---

[55]   *Id.*
[56]   *Id.*
[57]   86 F.3d at 1436.
[58]   DeOnna Opp. Br., Doc. 34 at 16 n.2, 19.

CHCC's rules provide that "guest[s] may use the Club when escorted by a member."[59] "Members of the Club are responsible for the character and conduct of any persons whom they invite onto Centre Hills Country Club premises" and that "[a] guest must be escorted by a member at all times; however, exceptions may be made with approval of the General Manager or his/her designee."[60] Guests may "may play the [original] course a total of two times on the original 18 holes (excluding member-guest tournaments) during any year, regardless of the number of members introducing them."[61]

As for events, "a member must sponsor the function, must be in attendance, and must accept responsibility for the conduct and attire of guests."[62] Of course, CHCC's rules do not dictate whether it is a private club, it must adhere to its restrictions on guests to maintain its status. The Court now turns to CHCC's actual practices.

It appears that nonmembers had the most access when they attended golf tournaments held at CHCC. In most tournaments, nonmembers were allowed to access the CHCC pro-shop, locker rooms, and certain dining facilities.[63] But there were other areas of the club, including the Grill Room, which were restricted to

---

[59]  CHCC Rules and Regulations, Doc. 22-13 at 17.
[60]  *Id.* at 15. The rules also provide that
[61]  *Id.* at 6. Guests were allowed to play on the "new course" an unlimited number of times as long as they are accompanied by a member. *Id.*
[62]  *Id.* at 19.
[63]  *See* DeOnna Resp. to CHCC's Statement of Facts ("RSOF"), Doc. 35 ¶ 8 (citing Mochan Dep., Doc. 22-6 at 11:15-18).

members.[64] DeOnna makes much of the number of areas the club could access but ignores the context of the nonmembers' access.[65] It is perfectly reasonable that nonmembers visiting CHCC a golf club for a golf tournament had access to most of the facilities relevant to the sport of golf. It is also reasonable that most of the facilities available at CHCC—again, a golf club—are related to playing golf. Even so, it appears that at most tournaments—if not all—CHCC only allowed nonmember guests to use certain facilities at certain times.[66]

As laid out above, there are clear restrictions on nonmembers who attend functions at CHCC both in CHCC's rules and in practice. The record does not show any instance where CHCC failed to adhere to its rules with respect to its tournaments, but even occasional departures are insufficient to overcome private membership status.[67] DeOnna therefore fails to establish a material factual dispute that CHCC treats members and nonmembers alike in their access to CHCC facilities.

---

[64]  It appears that guests who were specifically invited by CHCC members could access any area a member could so long as they were accompanying the member who invited them.

[65]  DeOnna Opp. Br., Doc. 34 at 18.

[66]  *See* Mochan Dep., Doc. 22-6 at 13:4-18, 18:17-19:16, 21:16-20, 27:19-29:6.

[67]  *See Chicago Club*, 86 F.3d at 1436 (finding two instances of events of nonmember organizations hosting events without hosting members insignificant); *Kelsey v. U. Club of Orlando, Inc.*, 845 F. Supp. 1526, 1530 (M.D. Fla. 1994) (finding "isolated accounts of incidents when members failed to abide by [the] defendant's rules" *de minimis*); *Thomas*, 2021 WL 716703, at *6 (finding the defendant was "still is a bona fide private membership organization even though nonmember guests and employees may use certain amenities on a limited basis").

### b.    CHCC's Relationships With Other Organizations

DeOnna next argues that CHCC's hosting events for third-party organizations undermines its private nature.[68] These events break into two categories: events for organizations connected to a CHCC member and events for organizations unconnected to any individual CHCC member. As is explained below, DeOnna's second argument fares no better than her first.

With respect to the first category, DeOnna argues that CHCC did not set meaningful restrictions on what sort of a relationship a member had to have with the third-party organization. The most prominent example of this is an annual tournament held at CHCC for the Pennsylvania Special Olympics. CHCC would have one of its members sponsor the event each year, but the member usually had no relation to the Special Olympics.[69] Despite DeOnna's arguments to the contrary, CHCC's practice does not undermine its status. Even if a member sponsored the tournament at CHCC's behest, the member still must do so of their own volition and assume responsibility for the event.[70] Their reason for sponsoring is immaterial.

Other examples include a tournament held by a CHCC member who served as president of a local bank and hosted the tournament for the bank's customers, some of whom were also CHCC members[71]; a similar tournament held for a local

---

[68]   *See* DeOnna Opp. Br., Doc. 34 at 18.
[69]   Mochan Dep., Doc. 22-6 at 14:15-15:15.
[70]   *See Thomas v. Buffalo Club*, 2021 WL 716703, at *6 (W.D.N.Y. Feb. 24, 2021) (rejecting a similar argument for the same reasons).
[71]   Mochan Dep., Doc. 22-6 at 30:3-31:3.

Catholic school hosted by several CHCC members who also served on the board of the school[72]; and a round of an international tournament sponsored by Audi and hosted by a CHCC member who owned local car dealerships.[73] The record is clear that each of these events shared the same essential features: member sponsorship and limited access for nonmember guests.[74] Therefore, these events to not strip CHCC of its private-club status.

However, there are several events that were not sponsored by any individual CHCC member.[75] Several of these "club-sponsored" events were member-guest torments, in which a CHCC member could invite one guest to play.[76] Although guests were not restricted to certain areas of the club, they were essentially allowed wherever their inviting member went.[77] Other tournaments involved CHCC members competing against teams of members from other clubs throughout the year.[78] It is not clear that each non-CHCC-member participant was invited by a member, but the nonmember participants were still restricted in their use of the

---

[72]   *Id.* at 49:15-20, 56:2-57:21.

[73]   *Id.* at 57:17-59:1.

[74]   All other tournaments and events held at CHCC were sponsored by members, and where the event was held for a third-party organization, the sponsoring member had "direct ties" to the organization. *Id.* at 59:14-61:6.

[75]   *Id.* at 41:17-44:32.

[76]   *Id.* at 40:14-41:2.

[77]   *Id.* at 41:3-19; *contra University Club*, 763 F. Supp. at 988 ("The uncontested facts also show that the persons the University Club designates as guests are not guests in the usual sense of the word. For example, there is no requirement that the 'guest' be accompanied by his or her 'host.'").

[78]   *See id.* at 26:1-28:6.

facility and CHCC members still had to sponsor the event, even though the nonmembers were billed separately.[79]

Two additional club-sponsored events were golf tournaments held at CHCC by the Professional Golfers Association ("PGA"), one for qualifying senior golfers, the other for qualifying juniors.[80] Although CHCC did not control who qualified and could play in those tournaments, attendees were again restricted to certain areas of the club.[81] Nonparticipant spectators were allowed to attend, but CHCC retained some control over nonparticipant attendance.[82] It appears some CHCC members played in both of those tournaments, but the number is small.[83]

Another club-sponsored event was a tournament held by CHCC's course superintendent for superintendents from other clubs, in which no CHCC members played.[84] That event involved about sixteen nonmembers and CHCC had complete control over the attendance and other aspects of the event; the attendees were only allowed to play the course.[85]

DeOnna lastly relies on a bridal shower held at CHCC for an employee paid for by that employee's family. CHCC's manager approved the event, but it was not member-sponsored and involved about fifteen people, none of whom were CHCC

---

[79]   *Id.* at 28:11-29:1.
[80]   *Id.* at 49:2-9, 53:4-55:16.
[81]   *Id.* at 44:7-23 (senior tournament); *id.* at 53:4-15 (junior tournament).
[82]   *Id.* at 45:7-46:9 (senior tournament); *id.* at 54:2-55:16 (junior tournament).
[83]   *Id.* at 43:20-24 (senior tournament); *id.* at 53:10-15 (junior tournament).
[84]   *Id.* at 50:1-51:3.
[85]   *Id.* at 51:4-23.

members.[86] Although the event was held in specific rooms, it does not appear that the attendees were otherwise restricted in their access to CHCC.[87]

Although all of these events had a significant nonmember presence and no sponsorship by an individual member, they are isolated instances occurring over a four-year period, and therefore not "significant breach[es] of [CHCC's] privateness."[88] The Court accordingly concludes that there is no material dispute of fact regarding the extent to which CHCC limited its facilities to its members.

### 2.    CHCC Does Not Publicly Advertise or Solicit New Membership

DeOnna argues that CHCC advertises and actively solicits members through its website.[89] But she offers nothing to support her argument beyond the fact that CHCC has a public website through which one can obtain a membership application or request more information.[90] The Court rejects DeOnna's invitation to hold that a static website offering information about joining an organization constitutes active solicitation or advertisement for new members.[91] Accordingly, DeOnna fails to create a genuine dispute of material fact regarding the extent to which CHCC

---

[86]   Dep. of Jennifer Read, Doc. 22-7 at 29:3-30:4.

[87]   *Id.* at 33:8-15.

[88]   *Chicago Club*, 86 F.3d at 1436; *see also Thomas*, 2021 WL 716703, at *6 ("[T]he Club still is a bona fide private membership organization even though nonmember guests and employees may use certain amenities on a limited basis.").

[89]   DeOnna Opp. Br., Doc. 34 at 20.

[90]   *See* DeOnna RSOF, Doc. 35 ¶ 31.

[91]   *See Chicago Club*, 86 F.3d at 1435 ("Prudently increasing membership to increase revenue while not abandoning selective membership practices exhibits nothing more than fiscal responsibility.").

advertises or solicits new members. The record shows that CHCC consistently followed its guest policies and consistently restricted nonmembers to certain areas of its facilities. DeOnna therefore fails to materially dispute that CHCC is a club in the ordinary sense of that word or that it is private.

### C.    CHCC is Sufficiently Selective In Its Membership Criteria

With regard to CHCC's lack of selectiveness, DeOnna points to several aspects of CHCC's application process: (1) CHCC has a publicly available website and does not charge an application fee, (2) spouses (and to a limited extent, dependents) of admitted members are afforded full membership without restriction and do not count towards the membership cap, (3) CHCC's background check is merely a Google search, and (4) CHCC has accepted every applicant for membership except one.[92] The Court concludes that none of these aspects undermine CHCC's selectivity in choosing its members.

It would appear that anyone can request a membership application to CHCC. But who can obtain an application and who is actually selected for membership are two different aspects of the application process. Only the latter affects an organization's selectivity. As for the application fee, although it does not appear that a member must pay for the privilege of applying, they must submit a check covering CHCC's initiation fee along with their application.[93] It is unclear if CHCC cashes

---

[92]   DeOnna Opp. Br., Doc. 34 at 20.
[93]   *See* Mochan Dep., Doc. 22-6 at 80:11-17; CHCC Membership Application, Doc. 22-14.

the check immediately or only when the member is fully admitted, but clearly a prospective member must take on some financial impairment to apply. That weighs toward private membership club status. Whether this is called an "application fee" or an "initiation fee" is an irrelevant matter of nomenclature.

Other than disputing whether a membership committee made up of CHCC members makes a recommendation to the Board regarding an applicant and the nature of the background check CHCC runs, DeOnna does not dispute how the membership process operates.[94] That process is consistent with the membership processes approved by other courts applying the private membership club analysis: an applicant must be sponsored by a current member and voted in by the organization.[95] As for DeOnna's dispute regarding the membership committee, the Court will infer in her favor that there is no membership committee recommendation made to the Board. Although the added procedural step would slightly weigh in favor of private club status, DeOnna does not dispute the more important member-sponsorship or Board-vote requirements.

DeOnna next points to the fact that upon admission, a member's spouse and dependents are also admitted without having to satisfy any criteria. First, it appears that should CHCC have concerns about a prospective member's spouse, it can

---

[94]  *See* DeOnna RSOF, Doc. 35 ¶¶ 32-44.

[95]  *See* Mochan Dep., Doc. 22-6 at 75:4-76:15; *Chicago Club*, 86 F.3d at 1436-37 (similar procedures). *Contra University Club*, 763 F. Supp at 989-90 (explaining that the only criterion enforced by the defendant was the "requirement that resident and non-resident members have undergraduate degrees and be at least 21 years old").

require the member or spouse to answer questions before accepting or rejecting them.[96] Second—and more fundamental—is the fact that membership of a prospective member's family rises and falls with the member.[97] Therefore, any criteria that apply to that member in essence applies to his or her family. Any CHCC member who sponsors an individual effectively sponsors that individual's dependents and spouse for membership.

DeOnna's argument that members' spouses and dependents are not subject to the membership cap fares no better. With respect to spouses, their admission, at most, doubles the membership. Although it is unclear what happens to dependents of members when they turn twenty-five, the Court will assume in DeOnna's favor that they are accepted into CHCC's membership.[98] That could substantially increase CHCC's membership.

The *Chicago Club* court noted that "[a]n organization's size may inform its private or nonprivate status to the extent that it illuminates the organization's membership admission practices," but "[t]he size of an organization is not, without more, probative of its privateness."[99] The EEOC disagrees with the Seventh Circuit's

---

[96] *See id.* at 78:5-21.

[97] *See id.* at 76:5-9.

[98] CHCC's rules state that "[a]t the point in time when a person is no longer qualified to be a Junior member, he/she will be accepted to Active or Young Adult status on an exception to quota basis." CHCC Rules and Regulations, Doc. 22-13 at 5. It is unclear whether dependents are excepted from the quota entirely or subject to the quota with discretionary exceptions.

[99] *Chicago Club*, 86 F.3d at 1435 (citing *Welsh v. Boy Scouts of America*, 993 F.2d 1267, 1276-77 (7th Cir.)).

conclusion that a private club's size, by itself, is irrelevant, maintaining that "[a] large membership suggests that an organization should not fall within the exemption because large membership inhibits intimacy in association, prevents full participation by all members, and suggests that a club is not exclusive."[100] It is unclear what the EEOC means by a "large" organization.

The *University Club* court, in addition to considering the University Club's size, considered the fact that the 3000-member organization continued to approve members after its cap was reached (although it did not inform the member until there was a spot available) and the fact that no one was ever rejected due to the membership cap.[101] The *Chicago Club* court simply noted that the Chicago club's membership was below the maximum authorized by its bylaws.[102]

In any event, the Court does not discern a real difference between the Seventh Circuit's position that "[t]he size of an organization is not, without more, probative of its privateness" and the EEOC's position that large organization suggests that the organization is not exclusive.[103] If a large organization's size actually impedes its membership from accomplishing the organization's purpose, size may affect whether the organization is a private club. But even with all inferences in her favor, DeOnna fails to show that CHCC's size affects its private status. She presents no

---

[100] Section 2 Threshold Issues, *supra* note 32.
[101] *See* 763 F. Supp at 986.
[102] *Chicago Club*, 86 F.3d at 1435
[103] *Id.*

evidence that CHCC's membership has grown so large that is an obstacle to CHCC's goals of fostering relationships between its members.

As for the background check, DeOnna offers no support for her bald assertion that all CHCC runs is a Google search on the applicant. CHCC's process is admittedly simple, but there is no requirement that private clubs must force their applicants to run a gauntlet to retain their private status. Moreover, CHCC's reliance on member sponsorship is already meaningfully selective.[104]

DeOnna last cites to CHCC's high acceptance rate as an indication that it is not a private club. This argument ignores the self-selecting nature of private club membership.[105] Given the need for a sponsorship by current member of CHCC, it is entirely unsurprising that CHCC accepts most of its applicants. This factor does not weigh in favor of finding that CHCC is not a private club.

At most, DeOnna has identified occasional drift from CHCC's policies throughout the relevant period. The Court does not find these minor instances to create a material dispute of fact. Therefore, it concludes that CHCC is a private membership club under 42 U.S.C. § 2000e(b) and exempt from DeOnna's Title VII suit. In light of that conclusion, the Court need not address the CHCC's

---

[104] *See id.* at 1436-37.

[105] *See id.* at 1436 ("One presumably affiliates with a private club because of the community of interests or agendas shared by the membership. The integrity of those common interests or agendas has much at stake in the membership selection process, and membership participation in the selection of new members is a crucial attribute of a private club. By participating in the selection process, members guarantee that the interests they share with other members will continue to bind the membership in the future.").

administrative exhaustion defense or the merits of DeOnna's discrimination claim. Accordingly, summary judgment is appropriate on Count I.

### D.    The Court Will Not Exercise Supplemental Jurisdiction Over DeOnna's PHRA Claim

The Court had federal question jurisdiction over DeOnna's Title VII claim under 28 U.S.C. § 1331. However, now that the Court has granted summary judgment in CHCC's favor because it is a private membership club, the only basis for retaining this matter in federal court is supplemental jurisdiction, as governed by 28 U.S.C. § 1367.

Section 1367(c)(3) "provides that '[t]he district court may decline to exercise supplemental jurisdiction over a claim' if "the district court has dismissed all claims over which it has original jurisdiction."[106] The Court has now granted summary judgment on DeOnna's Title VII claim, the only claim over which it had original jurisdiction. Therefore, the Court must determine whether exercising supplemental jurisdiction is appropriate, considering "judicial economy, convenience and fairness to the litigants."[107] Given the language of section 1367(c)(3), it appears that dismissal of state-law claims is appropriate on the sole basis that the federal claims have been dismissed.[108]

---

[106] *Annulli v. Panikkar*, 200 F.3d 189, 202 (3d Cir. 1999), *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000) (quoting 28 U.S.C. § 1367(c)(3)).

[107] *New Rock Asset Partners v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1505 (3d Cir. 1996) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966)).

[108] *See Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) ("Here, the District Court plainly recognized its discretion to retain jurisdiction over [the plaintiff's] remaining state-law claims

As for economy, convenience, and fairness, the Court recognizes that the parties have invested a considerable amount of time and resources in this matter. The Court appreciates their investment. But dismissal of supplemental claims is the risk federal plaintiffs run when they choose to file in courts of limited jurisdiction.[109] Moreover, the same evidence can be used to litigate DeOnna's PHRA claim in state court.[110] Indeed, the Third Circuit affirmed an order of this Court, issued by the late Honorable Malcolm Muir, declining to exercise jurisdiction in a case with "1,800 pages of deposition testimony, and 2,800 pages of discovery documents" where the defendants filed their motion for summary judgment on the eve of trial.[111]

Here, by contrast, the Court has not yet addressed the merits of DeOnna's discrimination claim in ruling on CHCC's motion. Nor has this matter been set for a trial date.[112] Furthermore, it is not entirely clear that the PHRA exempts clubs like CHCC in the same way that Title VII does.[113] Therefore, the Court will decline to

---

but, having dismissed all of her federal claims, declined to do so for a reason that Congress explicitly green-lighted under these circumstances.").

[109] *See Annulli*, 200 F.3d at 202-03 (collecting cases in which courts dismissed supplemental claims in situations similar to this matter).

[110] *See Knabe v. Boury Corp.*, 114 F.3d 407, 410 n.5 (3d Cir. 1997) ("Employer liability under the [PHRA] follows the standards set out for employer liability under Title VII." (citing *Hoy v. Angelone*, 691 A.2d 476 (Pa. 1997)).

[111] *Annulli*, 200 F.3d at 202-03; *see also id.* at 203 (noting that the plaintiff could use the same evidence to pursue its claims in state court).

[112] *See* July 20, 2022 Order, Doc. 38 (removing this matter from the November 2022 trial list to be rescheduled after resolution of any dispositive motions).

[113] In most circumstances, "[t]he proper analysis under Title VII and the [PHRA] is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." *Weston v. Pennsylvania*, 251 F.3d 420, 425 n.3 (3d Cir. 2001), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see also Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999). But that is not always the case, especially here, where CHCC argues it is exempted from the "protections" of antidiscrimination law. The

24

exercise supplemental jurisdiction and dismiss Count II of DeOnna's complaint without prejudice[114]

## IV. CONCLUSION

DeOnna has failed to establish a material dispute of fact as to CHCC's status as a private membership club. Therefore, summary judgment is appropriate on her Title VII claim because CHCC is not subject to Title VII. That leaves only DeOnna's PHRA claim, which does not have an independent basis for federal jurisdiction. The Court declines to exercise supplemental jurisdiction over DeOnna's PHRA claim because it has dismissed all federal claims. The Court's disposition of the instant motion has no effect on the merits of DeOnna's PHRA claim, and it appears that the

---

PHRA defines employers, in relevant part, as "any person employing four or more persons within the Commonwealth [of Pennsylvania]" but does not include "religious, fraternal, charitable or sectarian corporations or associations." 42 P.S. § 954(b). That exemption is somewhat similar to the Title VII exemption. However, unlike Title VII, the PHRA provides that "[t]he term 'employer[,]' with respect to discriminatory practices based on race, color, age, sex, national origin or non-job related handicap or disability, includes religious, fraternal, charitable and sectarian corporations and associations employing four or more persons within the Commonwealth." *Id.* It is possible that CHCC is a fraternal organization under the PHRA, but there does not appear to be any precedent interpreting the scope of that exemption. However, it also appears that CHCC employs more than four people. *See, e.g.*, Dep. of Chloe DeOnna, Doc. 22-1 at 39:14-17; Dep. of David Krauth, Doc. 22-4 at 12:13-13:5; Dep. of Elizabeth Mischock, Doc. 22-5, at 16:4-11; Dep. of Jennifer Reagan, Doc. 22-7 at 12:4-11; Dep. of Brandin Gray, Doc. 22-8 at 7:8-22 (indicating that Gray worked at CHCC and had ten employees under his supervision). Therefore, the Court notes—but does not decide—that for the purposes of DeOnna's PHRA claim—which alleges that CHCC engaged in discriminatory practices—CHCC is an employer subject to the PHRA. Although this does not appear to be a complex or novel issue as the statute as to justify declining jurisdiction under 28 U.S.C. § 1367(c)(1), it militates in favor of declining jurisdiction over concerns of comity. *See Gibbs*, 383 U.S. at 726.

[114] *See Kach*, 589 F.3d at 651.

PHRA does not similarly exempt CHCC. For the foregoing reasons, CHCC's Motion for Summary Judgment is granted in part and denied in part.

An appropriate Order follows.


BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge